# Third District Court of Appeal

## State of Florida

Opinion filed January 2, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-1064
Lower Tribunal No. F20-2488
_____

**Odis Grimes,**
Appellant,

vs.

**The State of Florida,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Joseph Perkins, Judge.

Carlos J. Martinez, Public Defender, and Deborah Prager, Assistant Public Defender, for appellant.

Ashley Moody, Attorney General, and Daniel Colmenares, Assistant Attorney General, for appellee.

Before LINDSEY, BOKOR, and GOODEN, JJ.

LINDSEY, J.

Appellant Odis Grimes appeals from a Final Judgment of Conviction and Sentence for burglary *with an assault* while in possession of a firearm. Grimes argues the evidence at trial failed to establish that he threatened the Victim and caused her to fear that violence was imminent, which are necessary elements of assault. Specifically, Grimes contends there was insufficient evidence that he knew the Victim was home. Because competent substantial evidence supports a finding that Grimes intended to threaten the Victim and that his threats created a well-founded fear of imminent violence, we affirm.

## I. BACKGROUND

According to the Victim's trial testimony, she met Grimes in 2008 when she was in 8th or 9th grade. They dated on and off until they had a daughter together in 2015, at which point they broke up and maintained a contentious coparenting relationship.

On the morning of the incident, the Victim called Grimes on the phone to confront him about his accusations that a member of the Victim's family was molesting their daughter.[1] Approximately 30 to 40 minutes later, the Victim heard two "booms" and glass shattering outside her apartment. She

---

[1] The Victim testified that Grimes was making these accusations to harass her family. According to the Victim, neither DCF nor the police have investigated the alleged molestation.

later discovered that her vehicle "had two bullet holes in the windshield, it had like bullet fragment scrapings on the hood and there was like a bullet hole in the passenger seat." She also heard a voice she instantly recognized as Grimes outside saying, "Let's go bitch. Let's go bitch." The Victim testified she was scared because she knew it was Grimes. She hid behind a door and saw Grimes break the window of her apartment with the barrel of a gun. The Victim further testified that if Grimes had seen her or known she was actually inside the apartment, he probably would have entered the apartment.

Surveillance video of the incident was entered into evidence at trial. The video shows a man, whom the Victim identified as Grimes, breaking the Victim's apartment window, attempting to open the door, and pointing his shotgun inside the apartment through the broken window.

At the close of the State's case, Defense counsel moved for judgment of acquittal arguing that based on the Victim's testimony there was no evidence of an assault because Grimes did not know the Victim was inside the apartment. Defense counsel renewed the motion at the close of its case. The trial court reserved ruling, and the jury found Grimes guilty of burglary with an assault while in possession of a firearm.

3

After entry of the verdict, the trial court denied both motions for judgment of acquittal, finding as follows:

> Here the evidence of Mr. Grimes's intent was overwhelming. First, he went to [the Victim's] house. [The Victim] is the mother of his child and he said let's go, bitch. And he went to the back of the property, to her efficiency. So it wasn't a random location.
>
> He went to her house after a call, a heated call, earlier that morning. So he certainly intended by his words, by breaking the windows - I'm not considering automobile factors because the jury found him not guilty as to the charge relating to that - but breaking the window of her efficiency and putting a gun inside of it and screaming let's go, bitch, are certainly words and acts that constitute an unlawful threat to do violence. And he certainly intended to do it.

The trial court sentenced Grimes to life in prison with a 10-year minimum mandatory. Grimes timely appealed.

## II. ANALYSIS

"When ruling on a motion for judgment of acquittal, the trial court must determine whether the evidence adduced at trial, when viewed in a light most favorable to the State, would allow a rational trier of fact to find 'the existence of the elements of the crime beyond a reasonable doubt.'" Perdomo v. State, 336 So. 3d 767, 768 (Fla. 3d DCA 2021) (quoting Bush v. State, 295 So. 3d 179, 201 (Fla. 2020)). "Generally, a conviction that is supported by

4

competent substantial evidence will be affirmed." Id. (quoting Baxter v. State, 318 So. 3d 601, 603 (Fla. 3d DCA 2021)).

The elements of assault are as follows: "(1) an intentional, unlawful threat by word or act to do violence to the person of another; (2) an apparent ability to carry out the threat; and (3) creation of a well-founded fear that the violence is imminent." Somers v. United States, 355 So. 3d 887, 891 (Fla. 2022). On appeal, Grimes contends that there was insufficient evidence to establish an intentional, unlawful threat to do violence (the first element) and creation of a well-founded fear that violence is imminent (the third element).

Grimes relies on the Victim's testimony at trial that *she* did not think Grimes knew she was home. This ignores the ample evidence that *Grimes* acted as though he believed the Victim was home. Indeed, the first element has to do with *Grimes's intent*, not the subjective beliefs of the Victim.

The evidence at trial showed that Grimes went to the Victim's home shortly after they had a heated telephone conversation. Her vehicle was parked out front. When Grimes arrived, he yelled expletives that were seemingly directed at the Victim. The surveillance video—which is consistent with the Victim's testimony and quite graphic and compelling— shows Grimes pounding on the door with his shotgun, trying to open the door, breaking the apartment window, pointing his gun inside, and looking

5

inside several times.[2] Consequently, a finding that Grimes intended to threaten the Victim is supported by competent substantial evidence.

The third element—a well-founded fear that violence is imminent—is also supported by competent substantial evidence. At trial, the Victim testified numerous times that Grimes's threats caused her to fear:

> Q How were you feeling when you heard the first few booms?
> A I jumped. I was scared.
> Q What about when you heard the glass shattering?
> A I was scared as well.
> Q And what about when you heard the first, "let's go bitch"?
> A I was more scared.
>
> . . . .
>
> Q Okay. Once you saw the Defendant with a gun pointed into your home how were you feeling?
> A Scared.
> Q What did you do?
> A I just froze, I stood still.
>
> . . . .
>
> Q And that person grabbed the doorknob too right?
> A Yes.
> Q Okay. They were trying to get in?
> A Yes.
> Q And this was terrifying?
> A Yes.

---

[2] It has oft been said that a picture is worth a thousand words; a video is undoubtedly worth exponentially more.

Q  And you were scared?
A  Yes.

## III.  CONCLUSION

Accordingly, because both elements of assault that are challenged on appeal are supported by competent substantial evidence, we affirm the trial court's denial of Grimes's motions for judgment of acquittal.

Affirmed.